**Luther YOUNG, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–979A271.**

Court of Appeals of Indiana, Second District.

Dec. 30, 1980.

---

Robert W. Hammerle, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Luther Young (Young) challenges the revocation of the suspension of sentences

imposed following his guilty plea to the charges of Unlawful Use of a Credit Card and Uttering a Forged Instrument.

We affirm in part and reverse and remand in part.

## FACTS

The evidence most favorable to the State indicates the following:

On September 2, 1976, Young was charged by information with Unlawful Use of a Credit Card and Uttering a Forged Instrument. On November 3, 1976, Young entered a guilty plea to both charges, and was given two concurrent sentences of one year, and two to fourteen years. However, following a hearing held pursuant to Young's Petition for Treatment In Lieu of Sentencing, the sentences were held in abeyance pending a report from the Department of Mental Health.

At a subsequent hearing, held December 17, 1976, the court found Young to be a drug abuser and likely to be rehabilitated through treatment. The court therefore committed Young to the Indiana Department of Mental Health "for a period not to exceed three years or until further order." (*R.* at 62).

Young progressed relatively well during his in–patient treatment. After about one year as an in–patient, Young became an out–patient at an Indianapolis facility, and continued to adhere to his probationary drug treatment program for roughly five more months. He was arrested for robbery, however, on June 23, 1978.

The record in this case includes a chronological compilation of correspondence and pleadings relating to Young's criminal history in the Marion County Superior Court, Criminal Division 2, resulting from the September, 1976 charges involving the credit card. Some of those records (Notice of Probation Violation; Amended Notice of Probation Violation), also contain references to other convictions of the Defendant, including Attempted Voluntary Manslaughter and two counts of theft from Johnson County for which Defendant was convicted

December 14, 1978. With the exception of the Johnson County theft convictions, all of Defendant's other appearances in the courts occurred in Marion Superior Court, Criminal Division 2.

On May 15 and May 22, 1979, a Probation Violation Hearing was held in Marion Criminal Court. During that hearing, the State sought to introduce evidence of Defendant's prior convictions, sentences, and probation through the testimony of Young's probation officer, and one of the supervisors of the drug rehabilitation program Young was enrolled in. Defense counsel made continuing hearsay objections to the testimony of these individuals, arguing that they had no first-hand knowledge of the convictions or terms of probation. All such objections were overruled, and the previously suspended sentences for Unlawful Credit Card Use and Uttering a Forged Instrument were imposed.

Defendant appeals from revocation of his probation.

## ISSUES

Defendant raises the following issues on appeal:

1. Does the record establish Young's prior sentences and probation history?

2. Were the conditions of Young's probation too vague to be applicable?

3. Did the evidence support the finding that Young violated the conditions of his probation?

4. Did the evidence support the finding that Young was convicted of another crime prior to the expiration of his probation?

5. Did the court properly sentence Young by ordering his previously suspended sentences to "run consecutively to any other sentences he may be serving?

## DECISION

We affirm the trial court on issues one through four, and remand for further findings regarding issue five.

*ISSUES 1–4*

With the exception of the Johnson County Theft convictions, all of Defendant's involvement with the prosecutorial authorities occurred in the Marion County Superior Court, Criminal Division 2. The record in this case contains references to other prosecutions involving the same defendant in the same court. Although defense counsel interposed hearsay objections to the testimony produced by the State, and although those objections were cogent as to their hearsay character, it is well established that a court judicially knows its own records. *Starkie v. State* (1943), 113 Ind.App. 589, 49 N.E.2d 968.

As to the matters involving the prosecution of Young for the 1976 charges of false credit card use and uttering a forged instrument, "The . . . court takes judicial knowledge of the facts disclosed by the record in any given case." *State v. Simpson* (1906), 166 Ind. 211, 76 N.E. 544, 545, reh. at 166 Ind. 215, 76 N.E. 1005. Furthermore, the commentators have recognized that "it is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, *and in previous trials or hearings*," McCormick, Evidence, 2d Ed. § 330 at 766 (1972). (emphasis added.)

Because the court will take judicial notice of earlier determinations involving the same parties which are vital to the determination of the present action, *Ensor v. Bennett* (1921), 76 Ind.App. 467, 132 N.E. 379, any misconduct involving Defendant aired in Judge Brewer's court was properly within the evidence considered by the trier of fact at the revocation hearing. Additionally, because there is a principle of law to the effect that the court may hear evidence in order to inform itself of that which it takes judicial knowledge, *Apple v. Greenfield Banking Co.* (1971), 255 Ind. 602, 266 N.E.2d 13, there was no error in allowing the State to examine correction Department employees as to information which, while hearsay to them, was judicially noticed by the court.

So there was evidence properly before the court, except for the Johnson County conviction, that Defendant violated the terms of his probation.

Defendant's second alleged issue, pertaining to the vagueness of the terms of his probation, must also fail. The order committed Young to the Department of Mental Health, "for a period not to exceed three years or until further order of (the committing) court." *R.* at 62. Clearly, such an order places Defendant under the supervision of the Department. Young knew that under their supervision he was to attend certain out-patient meetings. This he failed to do. Furthermore, he was arrested for robbery on June 23, 1978, well within the three year probationary period.

Because the initial commitment came from, and all subsequent correspondence from the Department of Mental Health regarding Young's progress came into the same court which revoked his probation, judicial notice was properly taken of both the terms of the probation and the violations thereof.

Thus, we affirm the trial court's findings in issues one through four, *supra*.

*ISSUE 5*

■ We must hold differently, however, as to Defendant's issue number five. A trial court has no authority to order the previously suspended sentences to run consecutive to any other sentence.[1] Consecutive sentences must be authorized by statute. *Williams v. State* (1977), Ind., 366 N.E.2d 642; *Baldock v. State* (1978), Ind. App., 379 N.E.2d 539. At the time of Young's convictions for Unlawful Use of a Credit Card and Uttering a Forged Instrument there was no statute allowing previously suspended sentences, imposed as the result of a probation violation, to run consecutive to a sentence imposed for an offense committed during the probation and prior to revocation. The existing law, which would require consecutive sentences, I.C. 35–50–1–2 (Burns Code Ed., Repl.1979), is not applicable. Without consideration of

---

1. We express no opinion as to whether the converse is true.

an *ex post facto* question, the savings clause of the new penal code of which I.C. 35–50–1–2 is a part provides:

"(a) Neither this act nor Acts 1976, P.L. 148 affects:

    (1) rights or liabilities accrued;

    (2) penalties incurred; or

    (3) proceedings begun;

before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted."

Acts 1977, P.L. 340, Sec. 150, p. 1611.

The probation revocation is a continuation of the same proceeding which was commenced when Young was first charged with his prepenal code offenses which culminated in his convictions of Unlawful Use of a Credit Card and Uttering a Forged Instrument. Therefore, when his probation was revoked and his original sentences, previously suspended, were ordered executed, the sentences commence as if I.C. 35–50–1–2 did not exist by the very terms of the savings clause. Prior to I.C. 35–50–1–2 a sentence commences at the time it is given and ordered executed. *See, Stuck v. State* (1972), 259 Ind. 291, 286 N.E.2d 652.

Therefore, we reverse and remand solely for the purpose of correcting Young's sentences and commitments by striking the verbiage concerning their being consecutive to another sentence.

Otherwise the judgment is affirmed.

SHIELDS, J., concurs in part and concurs in result in part with opinion.

SULLIVAN, J., concurs in part and concurs with SHIELDS', J., opinion.

SHIELDS, Judge, concurring in part and concurring in result in part.

I concur in Issue 5 and concur in result in Issues 1–4.

I choose to address separately Issues 1–4 because I have reservations about certain conclusions reached by Judge Buchanan and further believe Judge Buchanan's language on judicial knowledge is overly broad.

1. Acts 1974, P.L. 59, Sec. 18, p. 253.

Issue 1. Does the record establish Young's prior sentences and probation history?

■ The testimony of Willie Storie, a probation officer with the Marion County Criminal Court Probation Department, received without objection, establishes the prior history of this proceeding. Storie testified at the probation revocation hearing that Young was convicted in the trial court on November 19, 1976 of the unlawful use of a credit card and uttering a forged instrument. He further stated Young received the benefit of P.L. 59 [1] and, as a result, had his statutory sentences suspended and received three years probation. Therefore, Young's first issue is meritless.

Issue 2. Were the conditions of Young's probation too vague to be applicable?

Only two alleged conditions of Young's probation are in issue: (1) that Young successfully complete the P.L. 59 drug treatment program and (2) that Young not be convicted of a subsequent offense.

At the probation revocation hearing Storie testified the probation agreement, signed by Young, contained the condition that he complete the P.L. 59 drug treatment during his three years probationary period. Further, Young's verified application for treatment as a drug abuser contains the following:

"8. That he has been advised by his attorney that if Defendant elects to receive treatment and is accepted, he may be placed on probation ... and if he adheres to the treatment program and fulfills the other conditions of probation, he will be discharged, but any failure to adhere to the treatment program is a breach of probation which could result in revocation of probation and execution of sentence."

■ This evidence is sufficient to permit a reasonable factfinder to conclude that a condition of Young's probation, known to him, was his successful completion of the drug treatment program.

■ The record is devoid of any evidence that the probation agreement contained any condition relating to a subsequent conviction. However, this deficiency is cured by I.C. 35-7-2-2 (Burns Code Ed.) which provides:

"... If it shall appear that the defendant has violated the terms of his probation or has been found guilty of having committed another offense, the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed."

Therefore, it is inconsequential that the evidence fails to establish the probation agreement contained a condition relating to a subsequent conviction. The statute specifically provides that under the circumstances of a subsequent conviction the trial court may revoke the probation and impose sentence.

■ Issues 3 and 4: Did the evidence support the finding that Young violated the conditions of his probation? Did the evidence support the finding that Young was convicted of another crime prior to the expiration of his probation?

The evidence supports the finding that Young was convicted of a subsequent offense within the period of his probation. Mr. Storie testified Young received three years probation. While the record is unclear as to the date of sentencing, the earliest possible date is November 19, 1976. Hence the three years had not elapsed on May 4, 1979, the date Storie testified, without objection, that Young was sentenced by this same trial court for the offense of attempted voluntary manslaughter, necessarily a new penal code offense. Therefore, the evidence supports the trial court's revocation of Young's probation on the basis he committed a subsequent crime contrary to the provisions of I.C. 35-7-2-2.

Finally, I take advantage of Judge Buchanan's comments on the cogent objections made by Young's counsel at the revocation hearing to make the observation that evidentiary objections guard rights and must not be deprecated. Counsel, even in the face of hostility, must persevere in exercising the right to protect the client and, at the same time, the trial judge must recognize counsel's duty and exercise judicial restraint to ensure counsel has the opportunity to make his record.